# Illinois Official Reports

## Appellate Court

---

### *People v. Womack*, 2020 IL App (3d) 170208

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT B. WOMACK, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-17-0208 |
| Filed | April 3, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 06-CF-669; the Hon. Clark E. Erickson, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | James E. Chadd, Thomas A Lilien, and Andrew Smith, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Jim Rowe, State's Attorney, of Kankakee (Patrick Delfino, Thomas D Arado, Chelsea E. Kasten, and Stephanie L. Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.<br>Justice McDade concurred in the judgment and opinion.<br>Justice Schmidt dissented, with opinion. |

**OPINION**

¶ 1     Defendant, Robert B. Womack, was found guilty of attempted murder (720 ILCS 5/8-4(a) (West 2006)), aggravated battery with a firearm (*id.* § 12-4.2), and aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1)(3)(A)). The circuit court sentenced him to an 18-year term, with an additional mandatory 20-year enhancement for personally discharging a firearm, for a total of 38 years in prison. After an unsuccessful direct appeal and postconviction petition, defendant filed a motion for leave to file a successive postconviction petition, which the trial court denied. On appeal, defendant claims that he satisfied the cause-and-prejudice test by demonstrating that the 20-year firearm enhancement (*id.* § 8-4(c)(1)(C)) added to his sentence violated the proportionate penalties clause of the Illinois Constitution as applied to him under *Miller v. Alabama*, 567 U.S. 460 (2012). We reverse the denial of leave to file a successive postconviction petition and remand for second-stage proceedings.

## I. BACKGROUND

¶ 2

¶ 3     Defendant was charged with attempted first degree murder, aggravated battery with a firearm, and aggravated unlawful use of a weapon for shooting Michael McCarns on October 25, 2006. At trial, the evidence revealed that defendant was 16 years old when the shooting occurred and that he and McCarns had an argument on the day of the incident. McCarns testified that he confronted defendant at defendant's home and accused him of robbing a friend. Lashonda Williams was in her apartment nearby and testified that she heard McCarns threaten defendant by saying, "You b*** a*** n***, I'll whoop your a***." At some point, the argument ended, and McCarns left. After McCarns left, defendant drove to his grandfather's house to retrieve a gun. He then returned to his apartment with a .25 caliber revolver. Later that evening, McCarns came back to the apartment complex. He yelled at defendant and threatened him. McCarns told defendant that he did not care about defendant or his family and that he would shoot them all. Defendant drew his gun and fired five shots at McCarns at close range. He shot McCarns four times in the stomach and once in the wrist. McCarns is now paralyzed.

¶ 4     When interviewed by officers, defendant admitted that he shot McCarns but said that McCarns threatened him. He stated that McCarns was pointing and yelling at him. He told the officers that he tried to walk away but McCarns followed him. He then turned around and shot McCarns.

¶ 5     At sentencing, defendant faced a minimum sentence of 26 years in prison. See 720 ILCS 5/8-4(c)(1)(C) (West 2006); 730 ILCS 5/5-8-1(a)(3) (West 2006) (Class X sentencing range of 6 to 30 years with a mandatory 20-year firearm enhancement). The presentencing investigation report (PSI) revealed that defendant struggled academically throughout his childhood. He often had trouble with his peers and acted out when he was being teased by other students. In the ninth grade, he was in a serious car accident and never returned to school. He did not have a criminal record.

¶ 6     At the conclusion of the sentencing hearing, the trial court noted that defendant did not show any remorse for the victim, who is now paralyzed. In its discretion, the court sentenced defendant to 18 years in prison for attempted first degree murder, plus a 20-year mandatory firearm enhancement, resulting in a 38-year sentence. The court merged the aggravated battery conviction with the attempted murder conviction. It then sentenced defendant to 3 years for

aggravated unlawful use of a weapon, which was to be served concurrently to the attempted murder sentence. On direct appeal, this court affirmed the attempted murder conviction and reversed defendant's conviction for aggravated unlawful use of a weapon. *People v. Womack*, 392 Ill. App. 3d 1143 (2009) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7　　On October 21, 2009, defendant filed a petition for postconviction relief, alleging that the mandatory sentencing guidelines that resulted in his 38-year sentence violated his due process rights and that he was denied effective assistance of counsel and the right to an impartial jury. The trial court denied his postconviction petition, finding that the firearm enhancement was constitutional pursuant to *People v. Sharpe*, 216 Ill. 2d 481 (2005). On appeal, defendant did not challenge the constitutionality of the firearm enhancement, and we affirmed the trial court's denial of his postconviction petition. *People v. Womack*, No. 3-10-0087 (2012) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 8　　On July 7, 2016, defendant moved for leave to file a successive postconviction petition. He alleged that, in light of *Miller*, 567 U.S. 460, and its progeny, the statutory scheme that led to his cumulative 38-year sentence violated the federal and state constitutions both facially and as applied. Defendant attached to the motion documents from his childhood showing his struggles at school and his placement in special education classes.

¶ 9　　The trial court denied defendant leave to file the petition. In its written order, the court noted that defendant's sentence was "undeniably harsh" but that a discretionary sentence had been imposed after consideration of mitigating and aggravating factors.

¶ 10　　　　　　　　　　　　　　II. ANALYSIS

¶ 11　　The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) contemplates the filing of only one postconviction petition. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009). The Act expressly provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2016); see *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002) (stating that "the procedural bar of waiver is not merely a principle of judicial administration; it is an express requirement of the statute"). A successive postconviction petition may only be filed if leave of court is granted. 725 ILCS 5/122-1(f) (West 2016). "Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." *Id.* A petitioner shows cause by identifying a factor that impeded his or her ability to raise as specific claim during his or her initial postconviction proceedings. See *id.* § 122-1(f)(1). Prejudice is shown by "demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* § 122-1(f)(2).

¶ 12　　The cause-and-prejudice test involves a higher standard than the first-stage frivolous or patently without merit requirements. *People v. Smith*, 2014 IL 115946, ¶ 35. Accordingly, if the petition satisfies the successive postconviction standard, the first stage is rendered unnecessary and the successive petition is docketed for second-stage proceedings. *People v. Jackson*, 2016 IL App (1st) 143025, ¶ 20. In determining whether a petitioner sufficiently alleged cause and prejudice so as to be entitled to file a successive petition, the standard of review is *de novo*. *People v. McDonald*, 405 Ill. App. 3d 131, 135 (2010).

¶ 13　　Defendant contends that the trial court erred in denying his motion for leave to file a successive postconviction petition. He claims that he sufficiently alleged cause and prejudice

by demonstrating that, under *Miller* and recent Illinois cases, the 20-year firearm enhancement added to his sentence violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to him. See *People v. Barnes*, 2018 IL App (5th) 140378; *People v. Aikens*, 2016 IL App (1st) 133578.

¶ 14    The proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. An "as applied" constitutional challenge requires the defendant to show that the statute at issue violates the Illinois Constitution as applied to him. *Aikens*, 2016 IL App (1st) 133578, ¶ 33. A proportionality violation may be found where the penalty imposed for the offense is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller*). A punishment that constitutes " 'cruel,' 'degrading,' or 'so wholly disproportioned to the offense as to shock the moral sense of the community' " is not clearly defined because "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *Id.* at 339. In deciding whether a punishment shocks the moral sense of the community, we should evaluate objective evidence as well as the community's changing standard of moral decency. *Aikens*, 2016 IL App (1st) 133578, ¶ 33. In other words, we must consider "the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency." *Leon Miller*, 202 Ill. 2d at 340.

¶ 15    Recent Illinois case law demonstrates that the mandatory imposition of firearm enhancements for juveniles no longer reflects Illinois's evolving standard of decency. In *Barnes*, 2018 IL App (5th) 140378, the court held that the mandatory 15-year enhancement for possession of a firearm violated the Illinois Constitution as applied to a 17-year-old defendant convicted of armed robbery who had no prior criminal history and who committed the robbery with an unloaded gun. *Id.* ¶ 26 (trial court sentenced the defendant to an aggregate term of 22 years' imprisonment). Similarly, in *Aikens*, 2016 IL App (1st) 133578, the court held that a sentencing scheme, which included a 20-year firearm enhancement, was unconstitutional as applied to a juvenile convicted of attempted murder of a police officer, aggravated discharge of a firearm, and aggravated unlawful use of a weapon, where the juvenile had no criminal history, experienced a troubling childhood, and showed rehabilitative potential. *Id.* ¶¶ 1, 38 (trial court sentenced the defendant to a total of 40 years in prison).

¶ 16    Newly enacted laws from the Illinois legislature also suggest an evolution in juvenile sentencing. Pub. Act 99-69 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105(b)). Under the new sentencing provision, the trial court may, in its discretion, decline to impose any applicable firearm enhancement when sentencing a person who was under 18 years of age at the time of the offense. 730 ILCS 5/5-4.5-105(b) (West 2018). In *Aikens*, the court concluded that the 20-year mandatory enhancement was unconstitutional, as applied, because the court was not allowed to consider the defendant's age and other mitigating factors and the newly enacted law expressed a changing standard of moral decency. *Aikens*, 2016 IL App (1st) 133578, ¶ 33. The court explained:

> "We believe that this decision is consistent with the evolving standards for juvenile offenders in this State as evidenced by recent changes that have been made in the way that juveniles are tried and sentenced. See Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105 (West 2014)); [citation]. Now, when a person commits

- 4 -

an offense and is under 18 years of age at the time of the offense, there are additional factors the trial court must consider in sentencing that offender, including age, impetuosity, and level of maturity, and the trial court 'may, in its discretion, decline to impose any otherwise applicable sentencing enhancement based upon firearm possession.' Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105(b) (West 2014)). *** While these provisions do not apply retroactively, they are indicative of a changing moral compass in our society when it comes to trying and sentencing juveniles as adults. [Citations.]" *Id.* ¶ 38.

¶ 17   Likewise, applying the 20-year mandatory firearm enhancement to defendant in this case violates the proportionate penalties clause of our state constitution. As in *Barnes* and *Aikens*, the juvenile status of defendant at the time of the offense and the circumstance surrounding the incident should have some relevance in determining whether to impose the mandatory 20-year firearm enhancement. This is particularly true where, as here, a tense exchange occurred between the victim and defendant that resulted in the impulsive and reckless decision-making behavior to which young minds are more susceptible. See *Miller*, 567 U.S. at 471.

¶ 18   We further conclude that defendant's proportionate penalties clause claim satisfies the cause-and-prejudice test for successive postconviction petitions. Defendant satisfied the cause prong because the primary authority upon which he relied, case law applying the proportionate penalties clause of the Illinois Constitution to juvenile defendants whose sentences included mandatory enhancements, was not decided until after his direct appeal and the filing of his initial petition. See *Barnes*, 2018 IL App (5th) 140378, ¶ 26; *Aikens*, 2016 IL App (1st) 133578, ¶ 33. He also satisfied the prejudice prong by sufficiently alleging that the mandatory 20-year firearm enhancement is unconstitutional, as applied to him, because it precluded adequate consideration of his youth, nonexistent criminal record, and other mitigating factors.

¶ 19   The State argues that our decision in *People v. Edwards*, 2017 IL App (3d) 130190-B, demonstrates that defendant's argument fails to meet the cause-and-prejudice test required for a successive postconviction petition. In *Edwards*, the trial court sentenced defendant to 90 years for murder and attempted murder. *Id.* ¶ 46. The sentence imposed included a mandatory 25-year-to-life firearm enhancement and was greater than the possible minimum aggregate sentence of 76 years in prison (45 years for murder and 31 years for attempted murder). On appeal, the defendant argued that his 90-year sentence was unconstitutional under *Miller* because it amounted to a *de facto* life sentence. We found that defendant did not have standing to challenge his sentence under *Miller* because he was not sentenced to the mandatory minimum. *Id.* ¶ 81. We noted that the defendant was sentenced to a discretionary sentence, in which the trial court imposed an additional 14 years after evaluating several mitigating and aggravating factors. *Id.* ¶ 78.

¶ 20   We find *Edwards* distinguishable. Defendant is not arguing that his entire sentence is unconstitutional because it resulted in a *de facto* life sentence. Instead, defendant claims that the 20-year firearm enhancement imposed by the trial court violates the proportionate penalties clause as applied to him because the enhancement was mandatory. Unlike the defendant in *Edwards*, defendant has standing to challenge the enhancement under *Miller* because the enhancement was mandatory and did not allow the trial court to consider defendant's age as a mitigating factor. Moreover, unlike the defendant in *Edwards*, defendant is not challenging his sentence on direct appeal. Defendant is seeking to reverse the denial of his motion for leave to file a successive postconviction petition.

¶ 21 In considering leave to file a successive postconviction petition, as with an initial postconviction filing, all well-pleaded facts and supporting affidavits should be taken as true. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25. Here, the allegations underlying defendant's as-applied proportionate penalties claims, taken as true, are sufficient under *Leon Miller*, *Barnes*, and *Aikens* to satisfy the cause-and-prejudice test. See *People v. Davis*, 2014 IL 115595, ¶ 42; *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 48 (cause-and-prejudice test satisfied where defendant brought an eighth amendment challenge to his sentence under *Miller* because the decision was not available for consideration in earlier postconviction proceedings).

¶ 22 Defendant's motion for leave to file his successive postconviction petition, alleging an as-applied proportionate penalties clause violation, should have been granted. See *Davis*, 2014 IL 115595, ¶ 42; see also *Barnes*, 2018 IL App (5th) 140378, ¶ 29 (finding as-applied proportionate penalties clause violation on direct appeal). The cause is remanded for second-stage proceedings to allow for the requisite factual development of those constitutional claims.

## III. CONCLUSION

¶ 24 The judgment of the circuit court of Kankakee County is reversed and remanded for the appointment of postconviction counsel and second-stage proceedings.

¶ 25 Reversed and remanded with directions.

¶ 26 JUSTICE SCHMIDT, dissenting:

¶ 27 I disagree with the majority's finding that *Miller v. Alabama* applies. Also, that defendant sufficiently pled cause and prejudice.

### I. *Miller v. Alabama* Is Inapplicable

¶ 29 The majority finds defendant has "standing to challenge the enhancement under *Miller* because the enhancement was mandatory and did not allow the trial court to consider defendant's age as a mitigating factor." *Supra* ¶ 20. However, *Miller* gives defendant no such standing.

¶ 30 In *Miller*, the United States Supreme Court concluded that a mandatory life sentence without the possibility of parole prevented the consideration of a juvenile defendant's youth and attendant circumstances. *Miller*, 567 U.S. at 479. The Court made clear that when sentencing a juvenile defendant to life without parole, there must be "the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 489. In *People v. Buffer*, 2019 IL 122327, ¶ 27, our supreme court thoroughly analyzed *Miller* and its progeny finding,

> "to prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence."

The court went on to find a sentence over 40 years represents a *de facto* life sentence. *Id.* ¶ 41.

¶ 31    Defendant received a 38-year sentence. He must serve 85% of this sentence, equating to a 32-year term, making him eligible for parole at the age of 48. Defendant did not receive a life sentence in any sense. By our own supreme court's reasoning defendant cannot prevail on a claim based on *Miller* and its progeny.

¶ 32    In *Edwards*, this court refused to expand *Miller* and its progeny to include mandatory sentencing schemes that do not impose either the death penalty or life without parole. *Edwards*, 2017 IL App (3d) 130190-B, ¶ 76. The *Miller* decision did not prohibit all mandatory penalties for juveniles, only the "harshest possible" when a sentencing court is precluded from considering mitigating factors. *Miller*, 567 U.S. at 489. Defendant's mandatory 20-year firearm enhancement pales in comparison to the "harshest possible" or "most severe" of criminal penalties, *e.g.*, the death penalty or life without parole. *Id.*; *People v. Patterson*, 2014 IL 115102, ¶ 110. Additionally, the mandatory enhancement did not prohibit the trial court from considering defendant's youth and its attendant circumstances. I would adhere to the logic expressed in *Edwards* and decline to expand *Miller* into this arena. See *Patterson*, 2014 IL 115102, ¶ 110 ("[B]oth this court and the United States Supreme Court have closely limited the application of the rationale expressed in *Roper*, *Graham*, and *Miller*, invoking it only in the context of the most severe of all criminal penalties.").

¶ 33                                II. Cause and Prejudice

¶ 34    Courts disfavor successive postconviction petitions as they plague the finality of criminal litigation. *Davis*, 2014 IL 115595, ¶ 14. When bringing a successive petition, a defendant faces immense hurdles relating to procedural default. *Id.* One basis for relaxing these obstacles is where the defendant can show "cause" and "prejudice" for failing to raise the claim earlier. 725 ILCS 5/122-1(f) (West 2016); see *supra* ¶ 11.

¶ 35    The majority believes defendant's allegations taken as true are sufficient under *Leon Miller*, *Aikens*, and *Barnes* to satisfy the cause-and-prejudice test, citing *Warren* and *Davis*. *Supra* ¶ 21. This is flat-out wrong. *Warren* and *Davis* are inapposite. Both cases involved juvenile defendants sentenced to life without parole before the announcement of the new substantive rule in *Miller* prohibiting such a sentence absent certain considerations. *Warren* and *Davis* stand for the proposition that *Miller* applies retroactively, whether on direct or collateral review, to a juvenile defendant whose sentence violates its protections. As discussed above, defendant cannot prevail on a challenge based on *Miller*. Because *Miller*'s new substantive rule does not apply to defendant retroactively, its unavailability does not provide cause or prejudice.

¶ 36    I turn next to *Aikens* and *Barnes*. In addition to my belief that both cases were wrongly decided, they also fail to provide cause. Neither *Aikens* nor *Barnes* was a watershed in proportionate penalties clause jurisprudence. To my knowledge, the proportionate penalties clause existed in 2009 when defendant filed his first postconviction petition and his youth was a matter known to all involved. Defendant could have advanced his as-applied proportionate penalties clause challenge in his initial postconviction petition relying on *Leon Miller* and the arguments contained within. While *Miller*, *Aikens*, and *Barnes* provide helpful support for defendant's contention, the absence of those decisions when he filed his first postconviction petition did not impede him from making his as-applied proportionate penalties clause argument. See *People v. Guerrero*, 2012 IL 112020, ¶ 20 ("[T]he lack of precedent for a position differs from 'cause' for failing to raise an issue, and a defendant must raise the issue,

even when the law is against him, in order to preserve it for review."). Everything defendant needed to make his as- applied challenge was available to him in 2009. Merely citing *Leon Miller*, *Aikens*, and *Barnes* is insufficient to satisfy cause in this matter.

¶ 37 Defendant also failed to plead prejudice. Substantively, the mandatory firearm enhancement did not prevent the trial court from "adequately" considering defendant's age, lack of a criminal record, or other mitigating factors contained in the PSI when determining his sentence. See *People v. Banks*, 2015 IL App (1st) 130985, ¶ 19; *People v. Hunter*, 2016 IL App (1st) 141904, ¶ 59. Defendant faced 6 to 30 years for the attempt offense. He also faced one to three years for the aggravated unlawful use of a weapon offense. Including the firearm enhancement, the trial court could have sentenced defendant to 53 years' imprisonment. Instead, using its discretion, after considering mitigating and aggravating factors, including defendant's age and lack of a criminal record, the court imposed a discretionary sentence of 38 years, 12 years above the minimum. The court found "this an entirely appropriate case for the imposition of a 20-year add-on."

¶ 38 Aside from being a juvenile at the time of the offense, defendant's situation in this case is in no way similar to the situations presented in *Aikens* or *Barnes*. In *Aikens*, the juvenile defendant discharged a firearm at police officers in plain clothes, injuring no one. *Aikens*, 2016 IL App (1st) 133578, ¶ 4. The *Aikens* court rewarded the defendant for poor marksmanship by finding the mandatory firearm enhancement unconstitutional as applied under the proportionate penalties clause. *Id.* ¶ 37. The court relied on the fact that while the crime was serious, no one was physically harmed. *Id.* The *Aikens* court specifically refused to extend *Miller* to find the mandatory firearm enhancement facially unconstitutional. *Id.* ¶ 32. Instead, the court relied on *Leon Miller* and *People v. Gipson*, 2015 IL App (1st) 122451, in finding the enhancement unconstitutional as applied. *Aikens*, 2016 IL App (1st) 133578, ¶ 37.

¶ 39 In *Barnes*, a juvenile defendant used an unloaded revolver to rob a gas station clerk. *Barnes*, 2018 IL App (5th) 140378, ¶ 3. While the *Barnes* court discussed *Miller* at length, it relied on *Aikens* and *Leon Miller* in finding the mandatory firearm enhancement unconstitutional as applied under the proportionate penalties clause. *Id.* ¶¶ 23, 25. The court noted that the defendant had not caused any physical harm. *Id.* ¶ 25. In addition to the lack of physical harm, defendant used an unloaded gun, expressed remorse, and apologized, taking responsibility for his actions. *Id.*

¶ 40 Moreover, *Leon Miller*, which both cases rely upon, is inapposite. In that case, the trial court refused to apply the mandatory minimum to a juvenile defendant who acted as a lookout and subsequently was convicted of two counts of first degree murder based upon accountability. *Leon Miller*, 202 Ill. 2d at 330. The trial court explained,

" 'I have a 15-year-old child who was passively acting as a look-out for other people, never picked up a gun, never had much more than—perhaps less than a minute—to contemplate what this entire incident is about, and he is in the same situation as a serial killer for sentencing purposes.' " *Id.* at 332.

"In short, he was 'the least culpable offender imaginable.' " *People v. Walker*, 2018 IL App (3d) 140723-B, ¶ 39 (quoting *Leon Miller*, 202 Ill. 2d at 341). Our supreme court agreed with the trial court, finding the mandatory minimum was unconstitutional as applied under the proportionate penalties clause. *Leon Miller*, 202 Ill. 2d at 342-43.

¶ 41 When imposing a discretionary sentence in this case, the trial court noted,

"This is a case that is more than bad judgment on the part of the defendant. This is a case in which the defendant, knowing there was a dispute, an argument taking place, left the scene *** specifically for the purpose of arming himself with a loaded pistol. Then he returned to the scene. And, again, he shot Mr. McCarns at close range with a devastating consequence."

¶ 42    Defendant was the gunman, not a lookout. He shot McCarns at point-blank range, striking him four times in the abdomen and once in the wrist, paralyzing McCarns. It is nothing short of miraculous that McCarns survived. This sequence of events does not appear to me as "impulsive and reckless decision-making" but, instead, tantamount to premeditation. *Supra* ¶ 17. The trial court stated, "I haven't heard a word at any time of remorse for what [defendant] did." *Aikens*, *Barnes*, and *Leon Miller* are distinguishable from the instant case on these facts alone.

¶ 43    The circuit court did not err in dismissing defendant's successive postconviction petition. Defendant's sentence was determined according to the seriousness of the offenses and is not cruel, degrading, or so wholly disproportionate to the offenses committed as to shock the moral sense of the community. As is the case here, "a prison sentence of 40 years or less imposed on a juvenile offender provides ' "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." ' " *Buffer*, 2019 IL 122327, ¶ 41 (quoting *Miller*, 567 U.S. at 479, quoting *Graham v. Florida*, 560 U.S. 48, 75 (2010)). I find no violation of the proportionate penalties clause as applied to defendant. I would affirm.