2020 IL App (4th) 190528

NO. 4-19-0528

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 21, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| TORY S. MOORE, | ) | No. 97CF1660 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justices Turner and Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1        In July 2018, defendant, Tory S. Moore, filed *pro se* a motion for leave to file his second postconviction petition. The trial court later entered a written order finding "[d]efendant's Petition for Successive Post-Conviction Relief is dismissed and stricken."

¶ 2        Defendant appeals, contending the trial court erred by denying him leave to file a claim his natural life sentence is unconstitutional because the sentence violates the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11) as applied to him. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        In March 1999, defendant was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 1996)) after he and two codefendants kidnapped the victims at gunpoint. Defendant and the codefendants drove the victims around in a vehicle, taunting and threatening them before stopping near a cornfield. Defendant lined up the three victims in front of the vehicle and shot one in the head and shot him again after he had fallen to the ground. The other two victims fled. At the sentencing phase of the trial, the jury found the aggravated factor of felony murder beyond a reasonable doubt but declined to impose the death penalty.

¶ 5        In May 1999, the trial court sentenced defendant to natural life imprisonment without the possibility of parole. In doing so, the court found the offense "was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." This court affirmed the trial court's judgment on direct appeal. *People v. Moore*, No. 4-99-0451 (2001) (unpublished order under Illinois Supreme Court Rule 23).

¶ 6        In August 2006, defendant filed *pro se* a postconviction petition, which the trial court summarily dismissed. This court affirmed the trial court's judgment. *People v. Moore*, No. 4-06-0899 (2008) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7        In April 2013, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)). The trial court granted the State's motion to dismiss defendant's petition. This court affirmed the trial court's judgment. *People v. Moore*, 2015 IL App (4th) 130779-U, ¶ 23.

¶ 8        On November 6, 2017, defendant filed another section 2-1401 petition, which the trial court dismissed, finding it untimely filed and the claim raised therein barred by the doctrine of *res judicata*. This court again affirmed the trial court's judgment. *People v. Moore*, 2020 IL App (4th) 180132-U, ¶ 19.

¶ 9    On July 18, 2018, defendant filed *pro se* the instant motion captioned "Petition for Successive Post Conviction." In his motion, defendant addressed the cause-and-prejudice test, asserting his issues were based on a new substantive rule of law, noting, *inter alia*, the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), which was decided six years after the trial court dismissed defendant's initial postconviction petition. Defendant argued his natural life sentence was unconstitutional because it violated the eighth amendment of the United States Constitution and the Illinois Constitution's proportionate penalties clause. In support of his argument, defendant, who was 19 years old when he committed the crime, cited *Miller* regarding the developing brain of young adults. On July 25, 2018, the trial court entered a written order finding "[d]efendant's Petition for Successive Post-Conviction Relief is dismissed and stricken."

¶ 10    This appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal, defendant argues the trial court erred by denying him leave to raise an as-applied constitutional challenge to his natural life sentence based in part on *Miller* and its progeny in a successive postconviction petition.

¶ 13                          A. The Post-Conviction Hearing Act

¶ 14    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) contemplates the filing of only one postconviction petition. *People v. Bailey*, 2017 IL 121450, ¶ 15, 102 N.E.3d 114. Specifically, section 122-3 of the Act (725 ILCS 5/122-3 (West 2018)) declares "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." Section 122-1(f) of the Act (*id.* § 122-1(f)) represents an exception to the waiver rule. See *Bailey*, 2017 IL 121450, ¶ 15. It provides the following:

- 3 -

"[O]nly one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018).

For a defendant to obtain leave to file a successive postconviction petition, both prongs of the cause-and-prejudice test must be satisfied. *People v. Guerrero*, 2012 IL 112020, ¶ 15, 963 N.E.2d 909.

¶ 15        With a motion for leave to file a successive postconviction petition, the trial court conducts "a preliminary screening to determine whether [a] defendant's *pro se* motion for leave to file a successive postconviction petition adequately alleges facts demonstrating cause and prejudice." *Bailey*, 2017 IL 121450, ¶ 24. A defendant does not need to "establish cause and prejudice conclusively prior to being granted leave to file a successive petition." *People v. Smith*, 2014 IL 115946, ¶ 29, 21 N.E.3d 1172. However, the cause-and-prejudice test presents a higher burden than the frivolous or patently without merit standard applied at first-stage proceedings. *Id.* ¶ 35. A defendant must "submit enough in the way of documentation to allow a circuit court

to make" the cause-and-prejudice determination. *People v. Tidwell*, 236 Ill. 2d 150, 161, 923 N.E.2d 728, 734-35 (2010). A trial court should deny leave to file a successive postconviction petition "when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Smith*, 2014 IL 115946, ¶ 35. In conducting the preliminary screening, our supreme court has held the State should not be allowed to participate. *Bailey*, 2017 IL 121450, ¶ 27. When the trial court has not held an evidentiary hearing, this court reviews *de novo* the denial of a defendant's motion for leave to file a successive postconviction petition. See *People v. Gillespie*, 407 Ill. App. 3d 113, 124, 941 N.E.2d 441, 452 (2010).

¶ 16                                    B. *Miller* and Its Progeny

¶ 17             In *Miller*, 567 U.S. at 489, the Supreme Court found unconstitutional a sentencing scheme that mandated life in prison without the possibility of parole for juvenile offenders (those under the age of 18), including those convicted of homicide. The *Miller* Court did not foreclose sentencing a juvenile convicted of homicide to life in prison, but it emphasized the judge or jury must have the opportunity to consider mitigating factors before imposing the harshest possible penalty on a juvenile. *Id.* In reaching its holding, the *Miller* Court explained a sentencing court must consider how children are different from adult offenders for purposes of sentencing and how those differences counsel against irrevocably sentencing juveniles to a lifetime in prison. *Id.* at 480. The juvenile offender's youth and attendant characteristics must be considered before imposing life imprisonment without the possibility of parole. *Id.* at 483. Thereafter, in *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 736 (2016), the Supreme Court found the *Miller* decision announced a new substantive rule of constitutional law that was

retroactive on state collateral review. It also reiterated what must be considered before imposing life imprisonment without the possibility of parole on a juvenile. See *id.* at \_\_\_, 136 S. Ct. at 733-34. The *Montgomery* Court further emphasized life imprisonment without parole was unconstitutional "for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Id.* at \_\_\_, 136 S. Ct. at 734.

¶ 18        Before *Montgomery*, the Illinois Supreme Court in *People v. Davis*, 2014 IL 115595, ¶ 39, 6 N.E.3d 709, held *Miller* stated a new substantive rule of law applicable retroactively to cases on collateral review. As to the cause-and-prejudice test of section 122-1(f) of the Act, the *Davis* court found "*Miller*'s new substantive rule constitutes 'cause' because it was not available earlier to counsel [citation], and constitutes prejudice because it retroactively applies to defendant's sentencing hearing." *Id.* ¶ 42. The *Davis* case involved a defendant who was 14 years old at the time of the offense and had received a mandatory sentence of natural life imprisonment. *Id.* ¶¶ 4-5. In *People v. Holman*, 2017 IL 120655, ¶ 40, 91 N.E.3d 849, the Illinois Supreme Court further held "*Miller* applies to discretionary sentences of life without parole for juvenile defendants." There, the trial court exercised its discretion and imposed a sentence of life without parole for a murder the defendant committed at age 17. *Id.* ¶ 1.

¶ 19        In *People v. Reyes*, 2016 IL 119271, ¶¶ 9-10, 63 N.E.3d 884, our supreme court extended *Miller* to a mandatory term of years which was the functional equivalent of life without the possibility of parole (*de facto* life sentence). The *Reyes* court found the defendant had received a "*de facto* life-without-parole sentence," when he, at 16 years old, committed "offenses in a single course of conduct that subjected him to a legislatively mandated sentence of 97 years, with the earliest opportunity for release after 89 years." *Id.* ¶ 10. More recently in *People v. Buffer*, 2019 IL 122327, ¶ 41, 137 N.E.3d 763, our supreme court defined a *de facto* life sentence

by declaring "a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment."

¶ 20        As to young adults, in *People v. Thompson*, 2015 IL 118151, ¶ 1, 43 N.E.3d 984, the Illinois Supreme Court addressed whether a defendant may raise an as-applied constitutional challenge to his mandatory natural life sentence for the first time on appeal from the trial court's dismissal of a petition seeking relief under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). Citing *Miller*, the defendant argued his mandatory life sentence violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). *Thompson*, 2015 IL 118151, ¶ 17. Specifically, the defendant asserted "the sentencing statute was unconstitutional as applied to him because he was 19 years old at the time of the shooting, had no criminal history, and impulsively committed the offense after years of abuse by his father." *Id.* The supreme court agreed with the appellate court the defendant's argument was forfeited because it was not the type of challenge recognized as being exempt from section 2-1401's typical rules of forfeiture. *Id.* ¶ 39.

¶ 21        While the supreme court determined the defendant could not raise his as-applied constitutional challenge to his sentence under *Miller* for the first time on appeal from dismissal of a section 2-1401 petition, the *Thompson* court explained the defendant was not necessarily foreclosed from renewing his as-applied challenge in the trial court. *Id.* ¶ 44. It noted the following:

> "[T]he Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.*
> (West 2012)) is expressly designed to resolve constitutional issues,
> including those raised in a successive petition. [Citation.]

Similarly, section 2-1401 of the Code [of Civil Procedure] permits either a legal or factual challenge to a final judgment if certain procedural and statutory requirements are satisfied." *Id.*

¶ 22    In *People v. Harris*, 2018 IL 121932, ¶ 1, 120 N.E.3d 900, the supreme court was presented with both facial and as-applied constitutional challenges to the statutory sentencing scheme which resulted in a mandatory minimum aggregate term of 76 years' imprisonment for the defendant who was 18 years, 3 months of age at the time of the offenses. The defendant asserted on direct appeal his aggregate 76-year prison sentence violated both the eighth amendment and the proportionate penalties clause of the Illinois Constitution. *Id.* ¶ 17. The *Harris* court addressed defendant's facial challenge based on the eighth amendment and concluded it failed. *Id.* ¶ 61. In reaching its conclusion, the *Harris* court noted the Supreme Court drew "the line at age 18 because that 'is the point where society draws the line for many purposes between childhood and adulthood.' " *Id.* ¶ 60 (quoting *Roper v. Simmons*, 543 U.S. 551, 574 (2005)). The *Harris* court pointed out "[n]ew research findings do not necessarily alter that traditional line between adults and juveniles." *Id.* It noted "claims for extending *Miller* to offenders 18 years of age or older have been repeatedly rejected." *Id.* ¶ 61 (citing cases). The *Harris* court agreed with those decisions and the appellate court and declared, "for sentencing purposes, the age of 18 marks the present line between juveniles and adults." *Id.*

¶ 23    On the other hand, the *Harris* court declined to address the defendant's as-applied constitutional challenge based on the Illinois Constitution's proportionate penalties clause because it was premature. *Id.* ¶ 46. The supreme court noted the following:

"[A] court is not capable of making an as applied determination of unconstitutionality when there has been no evidentiary hearing and

- 8 -

no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional as applied is premature." (Internal quotation marks omitted.) *Id.* ¶ 39 (citing *People v. Rizzo*, 2016 IL 118599, ¶ 26, 61 N.E.3d 92).

¶ 24 In *Harris*, the defendant raised the issue for the first time on direct appeal. See *id.* ¶ 40. "Thus, an evidentiary hearing was not held on his constitutional claim, and the trial court did not make any findings of fact on defendant's specific circumstances." *Id.* The *Harris* court further noted *Miller* did not directly apply to the circumstances of the defendant, who committed the offense as a young adult, and thus the record had to be sufficiently developed to address the claim *Miller* applied to the defendant's particular circumstances. *Id.* ¶ 45.

¶ 25 The *Harris* court concluded the defendant's as-applied challenge was more appropriate for another proceeding. *Id.* ¶ 48. As in *Thompson*, the supreme court noted the defendant could raise his as-applied challenge under the Act, which allows for raising "constitutional questions which, by their nature, depend[ ] upon facts not found in the record." (Internal quotations marks omitted.) *Id.* (citing *People v. Cherry*, 2016 IL 118728, ¶ 33, 63 N.E.3d 871). Such a challenge "could also potentially be raised in a petition seeking relief from a final judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016))." *Id.*

¶ 26 In *People v. House*, 2019 IL App (1st) 110580-B, ¶ 64, 142 N.E.3d 756, *appeal granted*, No. 125124 (Ill. Jan. 29, 2020), the First District found the mandatory natural life sentence of a defendant who was 19 years and 2 months old when he committed the offense violated the proportionate penalties clause of the Illinois Constitution as applied to him based on the circumstances of his case, the reasoning behind the *Miller* decision, and other recent changes

in statutory and case law. There, the defendant raised the issue in an amended postconviction petition, which was dismissed by the trial court at the second stage of the proceedings. *Id.* ¶ 23. The *House* court concluded the defendant's claim was before it in the posture suggested by the supreme court's decision in *Harris*. It found the defendant's challenge was not premature, as it was in *Harris*. *Id.* ¶ 32. The *House* court concluded the defendant's mandatory sentence of natural life shocked the moral sense of the community based on the defendant's age, his family background, his actions as a lookout as opposed to being the actual shooter, and lack of any prior violent convictions. *Id.* ¶ 64.

¶ 27        More recently, the First District reversed the denial of a defendant's request for leave to file a successive postconviction petition and found the defendant made a *prima facie* showing *Miller* should apply to him. See *People v. Johnson*, 2020 IL App (1st) 171362, ¶ 2. The *Johnson* court found the defendant, who was 19 years old when he committed the offenses, established prejudice because "even if he had raised a *Miller* claim in his initial [postconviction] petition, it would have been rejected out of hand because of his age." *Id.* ¶ 26. In addressing the State's argument the defendant failed to plead enough facts to justify further proceedings, the court noted its analysis was not finished as "young adult defendants are not entitled to make an as-applied challenge to their sentences under *Miller* unless they first show that *Miller* applies to them." *Id.* ¶ 27 (citing *Harris*, 2018 IL 121932, ¶ 45). The court found the defendant's petition and supporting documentation—wherein he (1) pointed to recent research into the neurobiology and developmental psychology of young adults, (2) described his childhood turmoil and the pressures of his racial identity, (3) explained how most of the young men he encountered were gang members who engaged in violence and drug-related activities, and (4) alleged it was more natural to his immature brain to hang out with such a crowd rather than remove himself or find

new associations—pleaded sufficient enough facts to justify further proceedings. *Id.* ¶¶ 29-31; see also *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 56 (finding the 18-year-old defendant's request for leave to file a successive postconviction petition, "in detailed, well-cited legal argument," pleaded sufficient facts to make a *prima facie* showing *Miller* should apply to him).

¶ 28                    C. Defendant's Eighth Amendment Claim

¶ 29        We first turn to defendant's claim his natural life sentence is a violation of the eighth amendment to the United States Constitution. Here, defendant was 19 years old when he shot the victim. The Supreme Court in *Miller* explicitly held the eighth amendment only prohibits "mandatory life without parole for those *under* the age of 18" at the time of their crimes. (Emphasis added.) *Miller*, 567 U.S. at 465. As discussed, our supreme court further noted new research findings still "do not necessarily alter that traditional line between adults and juveniles." *Harris*, 2018 IL 121932, ¶ 60. Although defendant urges this court to change where the line is drawn, such a task is best left to the legislature. See *Buffer*, 2019 IL 122327, ¶¶ 34-35.

¶ 30                    D. Defendant's Proportionate Penalties Claim

¶ 31        We turn next to defendant's argument his natural life sentence violates the proportionate penalties clause of the Illinois Constitution. Article I, section 11, of the Illinois Constitution provides, in relevant part, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the proportionate penalties clause if it is " 'cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.' " *People v. Sharpe*, 216 Ill. 2d 481, 487, 839 N.E.2d 492, 498 (2005) (quoting *People v. Moss*, 206 Ill. 2d 503, 522, 795 N.E.2d 208, 220 (2003)). We may determine whether a sentence shocks the moral sense of the community by considering both objective evidence and

"the community's changing standard of moral decency." *People v. Hernandez*, 382 Ill. App. 3d 726, 727, 888 N.E.2d 1200, 1202-03 (2008).

¶ 32    Defendant contends his natural life sentence denies him the opportunity of being rehabilitated into a useful citizen because "[a] sentence that forces that future on someone who committed a crime as a youth is not a sentence imposed with the objective of restoring the offender to useful citizenship, as required by the proportionate penalties clause." (Internal quotation marks omitted.) Defendant argues his petition must advance for further proceedings. The State responds defendant cannot make a *prima facie* showing of prejudice because defendant failed to plead sufficient facts to support his claim he should be treated similarly to a juvenile offender. We agree with the State.

¶ 33                                    1. *Cause*

¶ 34    Defendant initially asserts he demonstrated cause under section 122-1(f) of the Act for failing to previously raise a *Miller*-based challenge to his sentence. Defendant notes *Miller* and the relevant cases that followed were not decided until after the conclusion of the earlier proceedings in his case. The State concedes defendant has established cause, and we agree.

¶ 35    The Supreme Court decided *Miller* in June 2012. Here, defendant was sentenced in May 1999, and his direct appeal was decided in October 2001. Additionally, proceedings on his original postconviction petition concluded in September 2006. *Miller* and its progeny were unavailable to defendant at the time of his sentencing, direct appeal, and earlier postconviction proceedings. See *Davis*, 2014 IL 115595, ¶ 42 ("In terms of the requisite cause and prejudice of the *** Act, *Miller*'s new substantive rule constitutes 'cause' because it was not available earlier to counsel ***.").

- 12 -

¶ 36                                    2. *Prejudice*

¶ 37          While defendant was an adult when he committed the offense, our supreme court

has recognized a defendant who committed the offense as a young adult may raise an as-applied

constitutional challenge in a postconviction petition based on the evolving science on juvenile

maturity and brain development which helped form the basis of the *Miller* decision. See *Harris*,

2018 IL 121932, ¶¶ 46, 48; *Thompson*, 2015 IL 118151, ¶ 44. Our supreme court has applied

*Miller* to discretionary sentences of life without parole, not just mandatory sentences. See

*Holman*, 2017 IL 120655, ¶ 40. The supreme court has also noted the new substantive rule

established in *Miller* constitutes prejudice "because it retroactively applies to defendant's

sentencing hearing." *Davis*, 2014 IL 115595, ¶ 42.

¶ 38          Defendant argues he should have the opportunity to develop the record to

determine whether the protections of *Miller* can apply to a 19-year-old offender. Successive

postconviction petitions, however, are "highly disfavored" (*Bailey*, 2017 IL 121450, ¶ 39) and,

as discussed, meeting the cause-and-prejudice test is a more exacting standard than the test for

surviving the first stage of an initial postconviction petition (*Smith*, 2014 IL 115946, ¶ 35). A

defendant must submit enough documentation to allow a trial court to determine whether the

cause-and-prejudice test was met. *Id.* (citing *Tidwell*, 236 Ill. 2d at 161).

¶ 39          We find the facts in the Fifth District's recent decision in *People v. White*, 2020

IL App (5th) 170345, similar to those presented here. In *White*, the 20-year-old defendant

appealed from the dismissal of his request for leave to file a successive postconviction petition,

wherein he asserted his mandatory natural life sentences violated the eighth amendment of the

United States Constitution and proportionate penalties clause of the Illinois Constitution. *Id.*

¶ 13. In support of his contention, the defendant alleged he had cause because case law "only

recently extended scientific evidence on the adolescent brain development to 18- to 21-year-olds" and argued "prejudice resulted from failing to bring these claims earlier in that he had significant rehabilitative potential and had taken college courses in prison, worked full time, and donated his time to a prison mural project." *Id.* The Fifth District, in rejecting the defendant's proportionate penalties claim, noted the following:

> "Here, the defendant argues that we need not address his claim on the merits but, instead, should allow him the opportunity to develop his claim, with the assistance of appointed counsel, as to whether *Miller* can apply to a 20-year-old for proportionate penalties purposes. *Harris* ***, however, made no mention of exactly what is necessary to overcome the high bar for leave to file a successive postconviction petition, and we find that a flat allegation as to evolving science on juvenile maturity and brain development is simply insufficient. [Citation.] Other than generally asserting studies that show that sometimes youthfulness can extend into a person's twenties, the defendant does not now allege how he was particularly affected by any immaturity, and it is undisputed that he did not suffer from any cognitive or developmental impairments." *Id.* ¶ 24.

¶ 40 Here, other than defendant's general assertion a 19-year-old's brain is more similar to a 17-year-old adolescent's brain rather than a fully mature adult's and noting the present offense being his first adult conviction, defendant's motion failed to provide any evidence to indicate how his own immaturity or individual circumstances would provide a

compelling reason to allow him to file a successive postconviction petition. On appeal, defendant maintains he established prejudice by offering the same assertions but contends his behavior may have been influenced by his difficult upbringing where he "was abandoned by his father at a young age, and *** his mother struggled with drug addiction and keeping her children fed." However, these factual allegations were missing from defendant's motion to file a successive postconviction petition; instead, his motion merely asserted the brain development commonly associated with juveniles can also extend into young adulthood. Although we recognize defendant has limited means while in prison, the standard for successive postconviction petitions is higher than initial petitions and a defendant is required to provide sufficient documentation. Defendant's flat assertion a 19-year-old's brain is more like a 17-year-old adolescent's in terms of development is simply insufficient to survive the more exacting standard that would warrant the filing of a successive postconviction petition. See *id.*

¶ 41 We note, briefly, defendant submitted a motion to cite *People v. Carrasquillo*, 2020 IL App (1st) 180534. We granted the motion but find *Carrasquillo* distinguishable. When analyzing the prejudice prong of the cause-and-prejudice test, the First District emphasized three factors that distinguish *Carrasquillo*: (1) the appellate court misstated the defendant's age when it reviewed his sentence on direct appeal, (2) the defendant's sentence was "one of the very harshest" the trial court delivered to an 18-year-old with no prior criminal record, and (3) the defendant had been eligible for parole and was "turned down over 30 times *** in almost as many years." *Id.* ¶¶ 110-11. We do not find *Carrasquillo* persuasive.

¶ 42                                    III. CONCLUSION

¶ 43 We affirm the trial court's denial of defendant's motion for leave to file a successive postconviction petition.

¶ 44        Affirmed.

**No. 4-19-0528**

| | |
|---|---|
| **Cite as:** | *People v. Moore*, 2020 IL App (4th) 190528 |
| **Decision Under Review:** | Appeal from the Circuit Court of Macon County, No. 97-CF-1660; the Hon. Thomas E. Griffith Jr., Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Lauren A. Bauser, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Jay Scott, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and Lara L. Quivey, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |